IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| **ROBERT LANCE II,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　vs.<br><br>**KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,**<br><br>　　　　　　**Defendant.** | **Court No. 2:22-cv-00233-DBP**<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION**<br><br>**Magistrate Judge Dustin B. Pead** |

　　　　This Social Security disability appeal is before the Court pursuant to 42 U.S.C. § 405(g). The Court has considered the administrative record (ECF No. 15 (AR)), the briefs submitted by the parties (ECF Nos. 18 (Pl. Br.), 20 (Def. Br.), 21 (Pl. Reply)), and the parties' positions at oral argument. Following the Court's review of the relevant evidence and legal authorities, the Court AFFIRMS the Commissioner's final decision denying Plaintiff Mr. Lance's application for disability insurance benefits (DIB) under Title II of the Social Security Act. Consistent therewith, Plaintiff's Motion for Review of Agency Action is DENIED and judgment shall enter in favor of Defendant and against Plaintiff. (ECF No. 18.)

　　　　　　　　　　　　　　**I.　　BACKGROUND**

**A.　　Summary of relevant evidence before the ALJ**

　　　　Plaintiff was 59 years old in October 2018, when he claimed that he became disabled due to low back pain, hip pain, and difficulty concentrating (*see* AR 33, 162, 189). He graduated college and had past relevant work as a data processing manager (AR 35, 48, 190, 206).

　　　　In mid-2018 (several months before he claims he became disabled), Plaintiff complained of left hip pain and displayed mildly antalgic gait and low flexibility (AR 281, 287, 315).

Around this time, he also reported low back pain; a magnetic resonance imaging (MRI) study showed a bulging disc resulting in moderate to severe narrowing of the spinal canal and severe narrowing of a nerve root opening (AR 312-13). Neurosurgeon Dr. Charles Rich recommended against surgery because the MRI did not show any acute findings that would cause Plaintiff's reported symptoms (AR 317). Plaintiff displayed some pain with left hip maneuvers, but he could toe-raise and heel walk, and he had full (5/5) strength and normal sensation (AR 316).

Plaintiff saw Dr. Christopher Gee in October 2018 for increased left hip pain; he rated his pain as two out of 10 (AR 319). Dr. Gee observed that Plaintiff had normal mental status, walked with a normal gait, had no focal left hip tenderness, and displayed full lower extremity strength (AR 320-21). An x-ray showed arthritis in the left hip, and Dr. Gee recommended "conservative treatment" such as physical therapy and injections (AR 321).

Plaintiff saw neurologists Dr. Ahmed Al-Sadat and Dr. Robert Engelen between late 2018 and late 2019. At his initial visit, he reported that his low back pain had "significantly improved" with treatment—he had "mild weakness" in his left leg and reported his pain was two out of 10 (AR 378). Examination findings were normal, including normal strength, intact sensation, and gait (AR 379, 382). In early 2019, Plaintiff had limited lower back range of motion but full strength, normal gait, no tenderness, and intact sensation (AR 386). After Dr. Al-Sadat recommended injections, Plaintiff reported 95 percent improvement in his hip pain; he said he was "gradually returning to normal activities" (AR 387, 390, 393, 395). In late 2019, Plaintiff complained of recurrent leg pain (AR 486). Examination findings remained largely normal, including normal gait, heel/toe walking, strength, and sensation (AR 396, 487, 479).

Later in 2019, Plaintiff complained of worsening left hip pain; he then underwent a total left hip replacement in December (*see* AR 471, 474). Four weeks after surgery, he reported no pain (AR 471). He was using crutches but displayed normal range of motion, strength, and sensation (AR 472-73). Six weeks after surgery, he said that he was in no pain (0/10) at rest and minimal pain (1/10) with activity (AR 468). He walked with a normal gait, had normal range of motion, and displayed normal strength and sensation (AR 469-70).

During this time, Plaintiff was seeing physician assistant (PA) Gerald Kelty as his primary care provider. In late 2019, he was "having fun driving his 40 [foot] motor home around the country with his wife" and "no longer need[ed] any pain med[ication]s" (AR 348). Mr. Kelty's examination findings were largely normal, including normal psychiatric findings (*see* AR 347, 351). In December 2020, an updated lower back MRI showed improvement when compared to the 2018 MRI—it showed mild degenerative changes resulting in mild narrowing of the central canal and mild-to-moderate narrowing of the nerve root openings (AR 515-16).

State agency medical consultants reviewed the record in 2020 to evaluate Plaintiff's abilities and limitations. *See* 20 C.F.R. § 404.1513a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation."). Dr. Kendrick Morrison and Dr. Ralph McKay found that Plaintiff had abilities consistent with a range of light work (AR 64-66, 77-78). *See id*. § 404.1567(b) (defining light work).[1]

---

[1] Under the agency's revised regulations, a finding by a State agency medical or psychological consultant at a prior level of review based on their review of the evidence is categorized as a "prior administrative medical finding." 20 C.F.R. § 404.1513(a)(5).

Plaintiff established care with Dr. Charles Richardson in Arizona (where he lived part of the year) in early 2021 (AR 540). He complained of increasing numbness in his feet with constant mild-to-moderate low back pain (AR 540). He had normal mental status (including "[u]nremarkable" memory, attention, and calculation), normal gait, normal sensation, normal spinal curvature, no muscle spasm, and no spinal or muscular tenderness (AR 540-41).

Although Plaintiff was living in Arizona, he saw Mr. Kelty via telemedicine twice in early 2021. In February, he complained of bilateral leg numbness and said he was "[l]osing focus at work [due to] the pain" (AR 517). Mr. Kelty reviewed the new lower back MRI, which he concluded "d[id] not contain a 'smoking gun' lesion, just spinal [narrowing] at three levels"—these findings were "doubtless why" neurosurgeon Dr. Rich "was hesitant to operate on him" (AR 517). The next month, Plaintiff said that his back pain was stable but not getting any better; it was "too painful at work," and he could not concentrate (AR 524). Mr. Kelty completed several forms indicating that Plaintiff experienced significant physical and mental limitations (AR 527, 537-39). Among other restrictions, Mr. Kelty opined that Plaintiff needed to lie down for five hours during an eight-hour workday, could lift no more than 10 pounds, and experienced extreme impairment in his ability to concentrate, persist, and maintain pace (AR 537-39).

In April 2021, Plaintiff saw Dr. Arthur Hatch for low back pain (AR 592). He rated his pain as four out of 10 (AR 592). Dr. Hatch observed that Plaintiff had normal mental status, gait, coordination, reflexes, sensation, strength, heel walking, toe walking, spinal curvature, and range of motion (AR 592). He provided several injections (AR 588, 590, 593).

**B.     The Commissioner's final decision**

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (AR 15-21). *See* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found at step two that Plaintiff had several impairments that qualified as "severe," he did not have a mental medically determinable impairment (AR 16). Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to do a restricted range of sedentary work (AR 17). *See id*. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(a) (defining sedentary work). At step four, the ALJ found that this RFC would allow Plaintiff to do his past relevant work as a data processing manager (AR 20; *see* AR 48-49 (vocational expert testimony)). The ALJ then made the alternative step-five finding that, even if Plaintiff could not do his past relevant work, he could do other work existing in significant numbers in the national economy (AR 20-21; *see* AR 49-50 (vocational expert testimony)). The ALJ thus concluded that Plaintiff was not disabled under the Act (AR 22). *See id*. § 404.1520(a)(4)(iv), (v).

## II.     STANDARD OF REVIEW

The Court reviews an ALJ's decision and determines whether substantial evidence on the record supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). "An ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157. The substantial evidence standard is even less demanding than the "clearly erroneous"

standard that governs appellate review of district court fact-finding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53, 119 S. Ct. 1816, 144 L. Ed. 2d. 143 (1999). Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). It is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted).

Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If the evidence is susceptible to multiple interpretations, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). That is, in reviewing under sentence four of 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the Court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

### III. FINDINGS AND CONCLUSIONS

Plaintiff argues that the ALJ (1) should have included mental limitations due to pain in his RFC (Pl. Br. 13-19)[2]; (2) did not include all of Plaintiff's limitations in his hypothetical to the vocational expert (Pl. Br. 19-20); and (3) improperly evaluated Mr. Kelty's medical opinion (Pl.

---

[2] The Court cites the page numbers assigned by the CM/ECF system in the upper right-hand corner of each page.

Br. 20-23). But as explained below, substantial evidence supports the ALJ's findings that Plaintiff's reported symptoms—including his reported mental limitations due to pain—were inconsistent with other evidence, as was Mr. Kelty's opinion. The ALJ reasonably declined to include unsupported limitations in Plaintiff's RFC or his hypothetical to the vocational expert. Substantial evidence—"more than a mere scintilla"—supports the ALJ's findings. *Biestek*, 139 S. Ct. at 1154.

A.  **Substantial evidence supports the ALJ's finding that Plaintiff had the RFC to do a restricted range of sedentary work without any mental RFC limitations**

Plaintiff bore the burden of showing that limitations should be included in his RFC assessment. *Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations."). The ALJ found that Plaintiff had established that he was limited to a range of sedentary work—the least-demanding exertional level of work, *see* 20 C.F.R. § 404.1567(a)—but did not establish any mental limitations (AR 17). In reaching that conclusion, the ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence (AR 18). The ALJ also evaluated the medical opinions and prior administrative medical findings as part of the RFC assessment (AR 19-20). The ALJ's analysis was legally sufficient and supported by substantial evidence.

1.  **Substantial evidence supports the ALJ's finding that Plaintiff's reported symptoms were inconsistent with other evidence**

The RFC assessment must address the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304. "Since the purpose of the [symptom] evaluation is to help the ALJ assess a claimant's RFC, the ALJ's [symptom] and RFC

7

determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Plaintiff claimed to experience debilitating symptoms, including difficulty concentrating and focusing due to pain (*see* AR 17-18 (summarizing symptoms)).

The ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence (AR 18). The Court must uphold an ALJ's symptom evaluation when it is supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The Court should find that "no substantial evidence" supports an ALJ's decision only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). Such is not the case here, as the ALJ gave four well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as he claimed: (1) the largely benign clinical examination findings, (2) the generally conservative nature of Plaintiff's treatment, (3) the efficacy of Plaintiff's treatment, and (4) inconsistent statements that Plaintiff provided about his symptoms (AR 16, 18-19).[3]

Notably, Plaintiff does not challenge any of the ALJ's reasons for finding that his reported symptoms were inconsistent with other evidence (*see* Pl. Br.). Regardless, the ALJ's symptom evaluation is supported by substantial evidence.

---

[3] Agency regulations lay out multiple factors that an ALJ must consider when evaluating a claimant's symptoms. *See* 20 C.F.R. § 404.1529. However, there is a "difference between what an ALJ must consider as opposed to what he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished). As such, an ALJ is not required to go factor by factor through the evidence, discussing how the evidence relates to each factor. Instead, the ALJ need only set forth the specific evidence on which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Poppa*, 569 F.3d at 1171.

**Objective medical evidence**

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."  SSR 16-3p, 2017 WL 5180304, at *5; *see* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence.").  Here, the ALJ recognized that, although there were abnormal clinical exam findings, Plaintiff generally displayed full strength, normal gait, intact sensation, normal muscle bulk and tone, and normal coordination (AR 18, 19; *see* AR 293, 296, 316, 320-21, 351, 356, 379, 382, 386, 396, 475-77, 487, 490, 527, 540-41, 592-93).  The ALJ cited clinical examinations showing that Plaintiff could heel-, toe-, and tandem-walk and get on and off an examination table without difficulty (AR 18; *see* AR 316, 386, 396, 479, 487, 490, 592).

Regarding Plaintiff's claims of impaired attention and concentration, the ALJ noted his "normal mental status examinations" (AR 16; *see* AR 293 (normal memory), 296 (same), 320 (alert and oriented), 338 (normal memory), 347 (oriented), 360 (normal memory), 386 (cooperative, alert, oriented, intact language comprehension, and fluent speech), 396 (same), 441 (alert, oriented, stable mood, appropriate insight and judgment), 479 (same), 482 (same), 487 (same), 490 (same), 493 (same), 519 (appropriate mood and affect), 527 (same), 540-41 (cooperative, pleasant, normal eye contact and speech pattern; unremarkable memory, attention, and calculation; and euthymic mood), 561-62 (same), 592 (alert, oriented, bright affect)).  There does not appear to be a single abnormal mental status examination finding in the record.

If Plaintiff's pain were as severe as he claimed, the ALJ could reasonably expect that providers would record clinical findings consistent with Plaintiff's reports.  Yet they did not.  Nor did they record any abnormal mental status findings, which one would expect to see if (as

9

Plaintiff claimed) his pain resulted in severe mental limitations. Rather, examination findings showed normal attention, memory, and concentration (*see* AR 293, 296, 338, 360, 540-41, 561-62). As such, substantial evidence supports the ALJ's finding that Plaintiff's pain (and, consequently, his mental limitations he attributed to pain) was not as limiting as he claimed. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (unpublished) (the fact that clinical examinations routinely showed a normal gait, full strength, and full range of motion undermined the claimant's allegations).

### Conservative treatment

The type of treatment a claimant receives is also relevant to the symptom evaluation. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Here, the ALJ recognized that, although Plaintiff had a total left hip replacement in late 2018, he pursued only non-surgical treatment for his low back pain (AR 18, 19). Dr. Gee recommended only "conservative treatment measures" (AR 321). Dr. Rich recommended against surgery because objective studies did not show any acute findings that would cause Plaintiff's reported symptoms and because Plaintiff had improved with conservative treatment (AR 317). And when Mr. Kelty reviewed the 2020 lower back MRI, he concluded it "d[id] not contain a 'smoking gun' lesion, just spinal [narrowing] at three levels," which was "doubtless why" Dr. Rich "was hesitant to operate on him" (AR 517). The ALJ also noted Plaintiff's testimony that, notwithstanding his claimed mental limitations, he was not attending therapy or taking psychotropic medication (AR 16; *see* AR 47).

"[I]f the . . . extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."

10

SSR 16-3p, 2017 WL 5180304, at *9.  Substantial evidence supports the ALJ's finding that Plaintiff's conservative treatment was inconsistent with his claims of debilitating symptoms.  *See Bainbridge v. Colvin*, 618 F. App'x 384, 387 (10th Cir. 2015) (unpublished) ("[F]requency says little about intensity of treatment" and finding that treatment including prescription drugs and physical therapy were conservative treatment).

### Effective treatment

Relatedly, the efficacy of a claimant's treatment is also relevant to the symptom evaluation.  *See* 20 C.F.R. § 404.1529(c)(3)(iv).  Here, the ALJ noted that, after Plaintiff's total left hip replacement, he had normal gait, range of motion, strength, and sensation (AR 18; *see* AR 469-70).  The ALJ also considered Plaintiff's considerable improvement with injections (AR 18, 19).  After Dr. Al-Sadat recommended injections in early 2019, Plaintiff reported 95 percent improvement in his hip pain; he said he was "gradually returning to normal activities" (AR 387, 390, 393, 395).  Plaintiff's relief appears to have been long-lived:  it was not until late 2019 that he complained of recurrent leg pain (AR 486).  *See White*, 287 F.3d at 909-10 (claimant's admission that medication relieved some of her pain supported finding that her impairments were not disabling).

### Inconsistent statements

When evaluating a disability claimant's symptoms, an ALJ considers whether there are inconsistencies between the reported symptoms and other evidence in the record.  20 C.F.R. § 404.1529(c)(4).  One such inconsistency occurs when a claimant reports more severe symptoms to the agency than he reports to his medical providers.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (upholding an ALJ's finding that the claimant's testimony that he

11

Case 2:22-cv-00233-DBP   Document 24   Filed 03/07/23   PageID.719   Page 12 of 17

needed a two-hour nap each day was inconsistent with the fact that he failed to report such a restriction to a physician). Here, the ALJ found that while Plaintiff told the agency that he experienced significant difficulty focusing due to pain, he had "not endorsed psychological or psychiatric symptoms" to his medical providers (AR 16). Other than two isolated reports in early 2021 to Mr. Kelty that he lost focus at work and could not concentrate at work due to pain (AR 517, 524), there is no evidence that Plaintiff told his providers that he experienced the level of impaired concentration that he claimed in his testimony and reports to the agency.

In short, some evidence was suggestive of greater limitations and some evidence was suggestive of lesser limitations. The ALJ as factfinder reasonably resolved those inconsistencies when he concluded that Plaintiff, though significantly limited, remained capable of a restricted range of sedentary work without mental limitations. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("[T]he record contains support for both the notion that [the claimant] has extreme deficiencies . . . and the notion that his . . . limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so." (citation omitted)).

  **2.   The ALJ evaluated the medical opinions and prior administrative medical findings consistent with the agency's revised regulations**

Because Plaintiff filed his DIB application after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations (*see* AR 13 (noting application date), 19-20). *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the revised regulations, for each medical opinion and prior administrative medical finding, the ALJ must articulate his consideration of (1) its persuasiveness, (2) the supportability factor, and (3) the consistency factor. *See* 20 C.F.R.

12

§ 404.1520c(b).  Here, the ALJ's evaluation of the medical opinions and prior administrative medical findings is legally sufficient and supported by substantial evidence.

Mr. Kelty opined that, among other restrictions, Plaintiff needed to lie down for five hours during an eight-hour workday, could lift no more than 10 pounds, and experienced extreme impairment in his ability to concentrate, persist, and maintain pace (AR 537-39).  The ALJ first articulated his consideration of the persuasiveness of Mr. Kelty's opinion, finding it unpersuasive (AR 19).  *Id*. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").

Second, the ALJ articulated his consideration of the supportability factor.  *Id*. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").  The ALJ found that Mr. Kelty's "opinions are not supported with explanation or rationale within the checkbox forms" (AR 19).

Indeed, Mr. Kelty's checkbox form opinion about Plaintiff's physical limitations did not elucidate the basis for his opinion (AR 537).  When asked if Plaintiff had "any other limitations," Mr. Kelty checked "Yes," but he did not explain what those limitations might be in the space provided (AR 537).  When asked if Plaintiff could complete a full-time job, Mr. Kelty wrote, "Not at all.  [Plaintiff] is unable to even sit in a chair for [more than] 1 [hour], requires rest/lying down.  Pain prevents him from concentrating on any complex task" (AR 537).  But Mr. Kelty never explained why he believed that Plaintiff experienced pain at a level that would support his

13

extreme limitation: he cited no diagnosis, clinical findings, or objective studies that would support his opinion (*see* AR 537).

Nor did Mr. Kelty's treatment notes provide evidence that could explain the basis for his extremely limiting opinion. Instead, as the ALJ found, "[h]is opinion is not supported by his treatment notes" (AR 19). "For example," the ALJ continued, "at the office visit date the same day as his opinion, [Plaintiff] reported that his back pain was stable and he was planning to travel by motor home" (AR 19; *see* AR 524). "On examination, he had normal extremities, intact cranial nerves, normal sensory function, and appropriate mood and affect" (AR 19; *see* AR 527). *Cf. White*, 287 F.3d at 907-08 (under the prior regulations, finding that a discrepancy between treating physician's very restrictive functional assessment and her contemporaneous examination a legitimate factor for rejecting that opinion). The ALJ thus found that "[t]hese objective findings do not support the assessment by Mr. Kelty" (AR 19).

"Although the ALJ specifically cited these . . . exhibits, the record contains other evidence supporting his conclusions." *Putnam v. Comm'r, SSA*, 789 F. App'x 694, 698 (10th Cir. 2019) (unpublished). It was rare for Mr. Kelty to record any abnormal physical or mental examination findings. In March 2019, he observed that Plaintiff was obese and had a tender left hip but displayed appropriate mood and affect (AR 356). In September 2019, he recorded normal musculoskeletal findings, normal sensation, and appropriate mood and affect (AR 351). In November 2019, he recorded normal findings, including normal orientation, mood, and affect (AR 347). In February 2021, he observed that Plaintiff appeared overweight but recorded otherwise normal findings, including appropriate mood and affect (AR 519). And in March 2021—when he rendered his opinion—Mr. Kelty recorded entirely normal findings,

14

including normal musculoskeletal findings, intact sensation, and appropriate mood and affect (AR 527). Such evidence lends little support to Mr. Kelty's highly restrictive opinion.

Third, the ALJ articulated his consideration of the consistency factor. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). The ALJ found that Mr. Kelty's "opinion is inconsistent with the objective evidence throughout the record that showed no evidence of mental dysfunction" (AR 19). As the ALJ discussed previously, Plaintiff had "normal mental status examinations" (AR 16). Providers recorded only normal memory, attention, and calculation (*see* AR 293, 296, 338, 360, 540-41, 561-62). Such findings appear facially inconsistent with Mr. Kelty's opinion that Plaintiff had moderate impairment in understanding and memory and marked to extreme impairment in sustained concentration and persistence (AR 538-39).

"As for [Mr. Kelty's] assessment of [Plaintiff's] physical functioning, his opinion is inconsistent with the evidence in the record showing normal gait, strength, coordination, and sensation" (AR 19). As the ALJ discussed within the symptom evaluation, Plaintiff generally displayed full strength, normal gait, intact sensation, normal muscle bulk and tone, and normal coordination (AR 18-19; *see* AR 293, 296, 316, 320-21, 351, 356, 379, 382, 386, 396, 475-77, 487, 490, 527, 540-41, 592-93). The ALJ had also cited examinations showing that Plaintiff could heel-, toe-, and tandem-walk and get on and off an examination table without difficulty (AR 18; *see* AR 316, 386, 396, 479, 487, 490, 592). Such findings appear facially inconsistent with Mr. Kelty's opinion that, for example, Plaintiff could stand or walk no more than

15

30 minutes at a time and one hour total in a workday, could not lift more than 10 pounds, and needed to lie down five hours in a workday (AR 537).

Finally, the ALJ found that Mr. Kelty's "opinion is inconsistent with the partly persuasive prior administrative medical findings" (AR 19). Dr. Morrison and Dr. McKay found that Plaintiff had abilities consistent with a range of light work (AR 64-66, 77-78). The ALJ found that their conclusions were "well supported by their explanation of and rationale for the limitations assessed based on their review of the record before them" and consistent with the many normal clinical examination findings (AR 19).

**B.      The ALJ reasonably relied on the vocational expert's testimony**

Plaintiff's argument that the ALJ erred at step five simply re-hashes his argument that the ALJ should have found that he was more limited (Pl. Br. 19-20). Yet the ALJ's hypothetical to the vocational expert included all the limitations he determined that Plaintiff experienced (*compare* AR 17 *with* AR 48-50). "The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). There was no error. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (no error where the ALJ's hypothetical included all the limitations he determined the claimant had).

### IV.      CONCLUSION

For the reasons discussed above, the Court AFFIRMS the Commissioner's decision denying Plaintiff's claim for disability benefits. Plaintiff's Motion for Review of Agency Action is DENIED. (ECF No. 18.)

Dated this 7th day of March, 2023.

_____
Dustin B. Pead
United States Magistrate Judge